IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re ) | |
| ) | |
| Carol Ann Wyatt ) | |
| ) | Ch 7 Case No. 05-22054-DRD |
| Debtor. ) | |
| _____ ) | |
| ) | |
| Carol Ann Wyatt, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adversary Proceeding |
| ) | No. 05-2071-DRD |
| Wanda Lorene Nowlin, ) | |
| a/k/a Wanda Lorene Doedli ) | |
| Linda Griggs ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

The adversary proceeding before the Court is the complaint filed by Carol Ann Wyatt ("Plaintiff") against Wanda Lorene Nowlin, a/k/a Wanda Lorene Doedli and Linda Griggs ("Defendants") seeking a determination of the validity of a lien claimed by Defendants on Plaintiff's mobile home ("Complaint"). Plaintiff asserts that Defendants' failure to obtain a written security agreement defeats the lien that they have asserted on Plaintiff's property. Defendants argue that Plaintiff lacks standing to bring this action and therefore, this Court lacks subject matter jurisdiction and that they have a properly perfected, valid, secured lien against Plaintiff's property.

This is a core proceeding under 28 U.S.C. §157(b)(2)(K) over which the Court has jurisdiction (assuming Plaintiff has standing) pursuant to 28 U.S.C. §§ 1334(b), 157(a) and

1

(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds: 1) that Plaintiff has standing to raise the issues asserted in the Complaint and that this court has subject matter jurisdiction to hear this matter; and 2) that Defendants do not have a secured interest in Plaintiff's mobile home.

## I.  FACTUAL BACKGROUND

Plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 12, 2005 ("Filing Date"). On Schedule B, Plaintiff lists as an asset of her estate a 1992 Clay Mobile Home, Model M2GHM ("Mobile Home"). The Mobile Home was purchased pursuant to a written agreement dated August 25, 2004 ("Contract"), whereby Plaintiff promised to pay Defendant Nowlin the purchase price of $16,000, to be paid in monthly installments.[1] The Contract consists of a hand-written document which identifies the Mobile Home, the purchase price and the terms of payment. There is no language in the Contract which purports to grant Defendants (or any party) a security interest in the Mobile Home. All parties were present and contributed to the language used in the Contract and Plaintiff's mother was the scrivener of the document. On December 22, 2004, the State of Missouri issued a certificate of title showing Plaintiff as the owner of the Mobile Home and Defendants as the first lien holders[2]. The Mobile Home is Plaintiff's current residence.[3] As of the Filing Date, approximately $13,891.00 of the

---

[1] See Plaintiff's Exhibit #1.

[2] Defendant Linda Griggs' name is shortened on the certificate of title which Defendants assert is simply a result of inadequate space on the application for the certificate.

[3] Plaintiff's Exhibit #1; Schedule C.

2

purchase price remained unpaid.

## II. DISCUSSION AND ANALYSIS

### A. Standing and Jurisdiction

In their post-trial brief, Defendants argue that Plaintiff lacks standing to bring the claim and that, as a result, the Court lacks subject matter jurisdiction. Defendant is correct that the Eighth Circuit has held that if a plaintiff lacks standing to assert a claim, the Court lacks subject matter jurisdiction over the claim, because there is no case or controversy, one of the principal constitutional requirements for a court's jurisdiction. *Republican Party of Minnesota v. Klobuchar*, 381 F.3d 785 (8th Cir. 2004); *Delorme v. United States of America*, 354 F.3d 810 (8th Cir. 2004); and *Faibisch v. University of Minnesota*, 304 F.3d 797 (8th Cir. 2002). Since the absence of standing implicates subject matter jurisdiction and the absence of subject matter jurisdiction may be raised at any time, Defendants' contention that Plaintiff lacks standing is not waived by reason of their not having asserted the defense in their answer and it must, therefore, be addressed by the Court.

In order to have standing to bring a cause of action, a plaintiff must have a present, substantial interest in the outcome of the case. *Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 871 (4th Cir. 1991), *citing Osborn v. Bank of United States*, 22 U.S. 738 (1824). The Court's research reveals that there is little, if any, precedent on the precise question of whether a Chapter 7 debtor has standing to seek declaratory relief regarding the validity of a claimed lien on certain property. In *Kelly v. Brae Asset Fund, L.P. (In re Kelly)*, 223 B.R. 50, 56 (Bankr. D. Mass.1998), the debtor sought a declaratory determination regarding the meaning and enforceability of a particular clause in his mortgage and a declaration of his interest in the mortgaged property. The Court held that because there existed a genuine dispute regarding the debtor's interest in the mortgaged property,

3

the debtor had standing to request an order from the bankruptcy court declaring what his interest was, if any, in the property. That a bankruptcy court has jurisdiction to hear, and a debtor has standing to seek declaratory relief regarding debtor's property, is a "...proposition so obvious and inherent in the bankruptcy system created by federal legislation that it is not surprising that it is difficult to find precedent directly on point." *Kelly,* 223 B.R. at 57.

Defendants' argument that Plaintiff lacks standing to bring her claim is multi-tiered. Defendants first note that the various statutes contained in part 5 of Title 11 authorize a trustee to bring the described avoidance actions. Citing the United States Supreme Court's opinion in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1 (2000), interpreting § 506(c), Defendants then argue that a statute conferring power to initiate an action on the trustee excludes other potential plaintiffs. The flaw in Defendants' argument is that Plaintiff's claim is not based on any of the statutes in part 5 of Title 11 or any other provisions which gives the trustee the right to sue. Plaintiff does not seek to avoid a transfer to Defendants on the ground that it was fraudulent, preferential, an invalid postpetition transfer, an unavoidable statutory lien or even unperfected. Plaintiff's complaint is more akin to an objection to the Defendants' claim on the ground that it is not secured, for the reason that no valid lien was ever created. Plaintiff, therefore, does not rely upon a statute which, by its terms, grants the trustee the power to bring the asserted claim. Defendants' argument, based on avoidance statutes and the *Hartford* holding is, therefore, inapposite.

There is no statute addressing the question of standing to request a determination of the validity of a lien in property. The Court must, therefore, be guided by general principles of standing. In this case, the debtor claimed the Mobile Home as exempt in its entirety. No objection to that

exemption was timely filed. Accordingly, the objection was allowed and the property passed out of the estate. Additionally, when the trustee filed the Trustee's Report of No Distribution, informing creditors that there were no assets worth pursuing, she essentially abandoned the estate's interest in the Mobile Home.[4] Finally, Defendants have failed to establish any prejudice to them because this action was brought by Plaintiff versus the trustee. *See Cummings v. Bankwest (In re Cummings)*, 147 B.R. 738, 744 (Bankr.C.D.S.D.1992) (fact that no prejudice resulted from debtor bringing the adversary versus the trustee supports finding that debtor had standing to bring the action).

Although the trustee has no interest in the Mobile Home or in this issue, Plaintiff does. Plaintiff needs to know whether the claimant has a valid lien on the property in order to determine whether it is necessary for her to deal with that lien and exercise one of the other options which might be available to her under the Bankruptcy Code, such as redemption of the property from the lien or reaffirmation of the debt. For the foregoing reasons, the Court finds that the Plaintiff has standing to bring this cause of action before the Court.

### B. Security Interest

Defendant argues that the Uniform Commercial Code ("UCC") does not apply to manufactured homes, citing the special provisions in the Missouri statutes relating to such property in §§ 700.350 through 700.390. While Defendants are correct that those statutes govern the *perfection* of liens in manufactured homes, the *creation* and *effect* of the liens are still governed by Article 9 of the UCC. Missouri courts have consistently so held when considering liens on motor

---

[4] The Court acknowledges that the trustee's interest in the Mobile Home is not technically deemed abandoned until the case is closed pursuant to 11 U.S.C. § 554( c), however the fact that the trustee filed the Trustee's Report of No Distribution *after* the Complaint was filed and that it has not been amended, supports the Court's finding that the trustee's intent is to abandon the estate's interest in the Mobile Home. *See Cummings,* 147 B.R. at 744.

vehicles, also governed by a certificate of title statute. *See Cole v. Miller (In re Miller)*, 320 B.R. 911, 915 (Bankr. E.D. Mo.2005) *citing Bradley v. K & E Investments, Inc.*, 847 S.W.2d 915, 921 (Mo.Ct.App.1993). The same holds true for manufactured homes in that, while they are subject to a specific certificate of title statute, those statutes only specify the manner in which the lien should be perfected. Article 9 continues to govern how the lien is created. *Moon v. Bank of America, F.S.B. (In re Schutz)*, 241 B.R. 646, 648 (Bankr. W.D.Mo.1999). Defendants cite the case of *In re McCormick*, 24 B.R. 718, 720 (E.D. Mich. 1982) in support of their contention. The decision in *McCormick*, however, does not support the Defendants' position. Rather, it recognizes the rule that "*perfection* of a security interest in a motor vehicle is accomplished by notation of the name of the secured party on the certificate of title." *McCormick,* 24 B.R. at 720 (emphasis added). It says nothing about how the security interest is created. In addition, in *McCormick*, the debtor had executed a security agreement granting a security interest in the vehicle, which did not happen in this case.

Article 9 applies to "any transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." *Wieberg v. Thompson (In re Thompson)*, 315 B.R. 94, 102 (Bankr.W.D.2004); Mo.Stat.Ann.§ 400.9-109(a)(1)(2005). A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." Mo.Stat.Ann.§ 400.1-201(37)(2005). A security interest attaches to collateral when it becomes enforceable against the debtor. Mo.Stat.Ann.§ 400.9-203(a)(2005). A security interest is enforceable against the debtor and third parties with respect to the collateral only if:

(1) value has been given;

(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to

a secured party; and

(3) one of the following conditions is met: (A) the debtor has authenticated a security agreement that provides a description of the collateral....

Mo.Stat.Ann. § 400.9-203(b).[5]

There is no dispute that the Contract satisfies § 400.9-203(b)(1) and (b)(2) as value was given by Plaintiff at the time the Contract was executed, and Plaintiff has rights in the collateral and the power to transfer the same as evidenced by her name as the owner of the certificate of title.[6] The only issue for the Court to determine is whether the parties executed a document which could be construed as a security agreement.

Defendants contend that a security agreement was executed in this case, citing the provision of the form Application for Missouri Title and License requesting the security agreement date and referring to the notation of a lien date of December 22, 2004 on the title.[7] However, no security agreement is in evidence in this case. The only exhibits in evidence are the Contract, which contains absolutely no language that could be construed as granting any party a security interest in the Mobile Home and the certificate of title. Neither an application for Missouri title, nor the form of the application was introduced into evidence. Indeed, the appearance of the notation of the lien on the certificate of title is not thoroughly explained by the evidence. First, there is no document in evidence which corresponds to the date of December 22, 2004 and evidences the creation of a

---

[5] None of the remaining options available under § 400.9-203(b), subsections (B) through (D), are applicable in this case.

[6] See Plaintiff's Exhibit #2.

[7] The requirement, taken from Mo.Stat.Ann. § 700.360(1), that the date of the security agreement be provided, buttresses the Court's holding that a security agreement is necessary.

security interest as of that date. Second, the certificate of title contains the names (or portions thereof) of both Defendants. How Ms. Griggs' name appeared on the title is unexplained, because she does not appear to have had any interest in the Mobile Home and was not a party to the Contract.

Although there is no magic language necessary to create a security interest, in the Eighth Circuit, there must be some language in the security agreement (or other document) that can be construed to convey a security interest. *Wieberg,* 315 B.R. at 103, *citing United States v. Missouri Farmers Associates, Inc.*, 580 F.Supp. 35, 36 (E.D.Mo.1984), *aff'd*, 764 F.2d 488 (8th Cir.1985), *cert denied, Missouri Farmers Association, Inc. v. United States*, 475 U.S. 1053 (1986). The facts in this case are virtually identical to the facts in *Shelton v. Erwin*, 472 F.2d 1118 (8th Cir.1973). In *Shelton*, the Court was asked to determine whether a bill of sale, coupled with a certificate of title showing the seller as the first lien holder, was sufficient under § 400.9-203(b) to create a security interest. The Eighth Circuit reversed the district court's holding to the contrary and held that, notwithstanding undisputed evidence of an intent to create a security interest, a bill of sale and a certificate of title indicating the name of a first lien holder, without any language even referencing a security interest, are insufficient to create a security interest in collateral. *Shelton,* 472 F.2d at 1120. The Eighth Circuit also observed that the result reached in that case may seem harsh, especially in light of the fact that the parties clearly intended to create a security interest, but that it is necessary to be mindful of the purpose of Article 9 of the UCC, which is to minimize the possibility of future disputes as to the terms of a security agreement. *Shelton,* 472 F.2d at 1120 *citing* § 400.9-203, comment 5. In this jurisdiction, the intent of the parties only becomes relevant if there is some language in the documents memorializing the transaction, which could be construed as granting a security interest. *Weiberg,* 315 B.R. at 103. While broader, more liberal rules have been adopted in other

8

jurisdictions, the rule announced in *Shelton* has not been modified in the Eighth Circuit or in the state of Missouri. *Cambridge v. Stubbs (In re Cambridge)*, 34 B.R. 88 (Bankr. W.D. Mo. 1983); *Maddox v. Federal Deposit Ins. Corp.*, 92 B.R. 707, 711 (Bankr.W.D.Texas1988).

Defendants urge the Court to adopt the "Composite Document Rule," which essentially states that there need not be a separate document labeled "Security Agreement" but rather, all relevant loan documents may be examined to determine whether a security agreement exists. *See Maddox,* 92 B.R. at 711. Even if the Court were to apply the Composite Document Rule in this case, which as noted above has not been adopted in the Eighth Circuit or in Missouri, there simply is not enough language in the documents in evidence for the Court to find that a security interest exists. *See Maddox*, 92 B.R. at 711. In *Maddox*, for example, there was: 1) a promissory note which referred to "collateral" and indicated that it would "secure the indebtedness" and indicated that the holder of the note was entitled to sell the "collateral" upon default of the note; 2) a Loan Agreement which referred to a Security Agreement and a UCC-1 filing; 3) a UCC-1 which described the parties as debtor and "secured party"; and 4) a Lessor's Subordination Agreement in which the lessor subordinated to all liens securing the note. *Maddox,* 92 B.R. at 709. In a Circuit where the Composite Document Rule controls, which even the *Maddox* Court specifically acknowledged does not include the Eighth Circuit, it would seem that the documents in evidence in *Maddox* would in fact be sufficient to find that a security interest exists by way of necessary implication versus express grant. However, because the Eighth Circuit requires some written evidence of the intent to create a security agreement, and there are no documents in evidence, signed by the Plaintiff, that reference a security agreement, or collateral or any language that could even be construed as creating a secured interest in the Mobile Home, the Court finds that there is no security agreement pursuant

to Mo.Stat.Ann. § 400.9-203(b), and therefore Defendants do not have an enforceable lien in the Mobile Home.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated:      February 23, 2006             /s/ Dennis R. Dow
                                          THE HONORABLE DENNIS R. DOW
                                          UNITED STATES BANKRUPTCY JUDGE